J-A03027-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| ADOPTION OF: J.B., A MINOR | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: R.B., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 873 WDA 2023 |

Appeal from the Decree Entered July 3, 2023
In the Court of Common Pleas of Erie County Orphans' Court at No(s):
16 In Adoption 2023

BEFORE:  BOWES, J., KUNSELMAN, J., and MURRAY, J.

MEMORANDUM BY KUNSELMAN, J.:                    **FILED: April 8, 2024**

R.B. (Mother) appeals the decree issued by the Erie County Orphans'
Court, which terminated her rights to her 8-year-old son, J.B. (the Child),
pursuant to the Adoption Act. ***See*** 23 Pa.C.S.A. § 2511(a)(1), (2), (5), (b).[1]
After careful review, we affirm.

The record discloses the following background.  Mother and the Child
had been involved with the Erie County Office of Children and Youth (the
Agency) dating back to 2017.  The relevant history began in March 2022, when
the Child's sibling was born.  At that time, Mother tested positive for THC,
opiates, fentanyl, and methadone.  In April 2022, the Agency received a report
that the newborn sibling was hospitalized after aspirating on formula; Mother

---

[1] The Child's biological father was unknown.  The putative father was M.P.A.
The orphans' court terminated the parental rights of both M.P.A. and the
Unknown Father.  No appeal was taken.

had fallen asleep while feeding him. Eleven days later, in May 2022, the sibling was taken off life support and passed away.

Thereafter, the Agency arranged a meeting with Mother to address its ongoing safety concerns. In addition to Mother's drug use, the Agency was also concerned with Mother's mental health. Mother reported that she had been diagnosed with bipolar disorder, anxiety, depression, unspecified mood disorder, Post-Traumatic Stress Disorder and borderline personality disorder. Mother also had a criminal history relating to simple assault, forgery, possession of a controlled substance, resisting arrested, retail theft, and public intoxication. Mother did not participate in the meeting with the Agency, but she did eventually provide a urine screen, which was positive for fentanyl and THC.

On May 16, 2022, the Agency obtained an emergency order for protection and removed the Child from the home. On May 20, 2022, the Agency filed a dependency petition. Mother stipulated to the allegations set forth in the petition, and in June 2022, the court adjudicated the Child dependent. The court ordered a permanency goal of adoption concurrent with the goal of reunification, given Mother's history with the Agency. Mother's reunification goals included: complete an assessment for eligibility for treatment court and participate in recommended services; remain sober and submit to random urinalysis screens; obtain gainful employment and safe housing; receive a mental health evaluation and follow treatment recommendations; and participate in parenting classes and visitation.

Over the course of the dependency proceedings, Mother made some progress, but she never achieved sobriety for an extended period. Following the June 2022 adjudication, Mother completed an inpatient drug treatment program, but relapsed a couple weeks later. By the time the court held the September 2022 permanency review hearing, she was able to maintain safe housing but continued to test positive for illicit drugs. In October 2022, the Agency petitioned the court to change the permanency goal to adoption. At the January 2023 review hearing, the court learned that Mother had tested positive for amphetamines, cocaine, ecstasy, methadone, THC, fentanyl, morphine, and heroine. Following the January review hearing, the court changed the goal from reunification to adoption, and further ordered that the Agency was relieved from providing reunification services.[2]

Meanwhile, the Agency had difficulty finding a placement for the Child. The Child had been diagnosed with autism and displayed manic-type behavior. The Child was originally placed in a kinship home, but the placement only lasted a week. As a result, the Child resided at the shelter facility for approximately five months. Ultimately, the Child was placed in a foster home, where he made significant progress regarding his potty training, speech, and control of his behaviors.

---

[2] Mother appealed the goal change order, and this Court affirmed. **See Interest of J.B.**, 202 A.3d 795 (Table), 2023 WL 1861791 (Pa. Super. July 31, 2023) (non-precedential decision).

The Agency petitioned to terminate Mother's rights in February 2023. The orphans' court held a two-day hearing on May 9 and June 16, 2023. The court heard testimony that Mother cared deeply for the Child, but that she had continued to abuse drugs, even relapsing as recently as one month before the termination. On June 30, 2023, the court granted the Agency's petition and terminated Mother's rights under 23 Pa.C.S.A. § 2511(a)(1), (2), (5), and (b). Mother timely filed this appeal, and she presents the following issues for our review:

> 1. Whether the orphans' court committed an error of law and/or abused its discretion when it concluded that termination of parental rights was supported by clear and convincing evidence pursuant to 23 Pa.C.S.A. § 2511(a)(1), (2), and (5).
>
> 2. Whether the orphans' court committed an error of law and/or abused its discretion when it concluded that termination of parental rights was supported by clear and convincing evidence pursuant to 23 Pa.C.S.A. § 2511(b)?

Mother's Brief at 3.

We begin with our well-settled standard of review:

> The standard of review in termination of parental rights cases requires appellate courts to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. A decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. The trial court's decision, however, should not be reversed merely because the record would support a different result. We have previously emphasized our deference to trial courts that

- 4 -

often have first-hand observations of the parties spanning multiple hearings.

*In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013) (citations and quotation marks omitted).

Clear and convincing evidence is evidence that is so "clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue." *In re C.S.*, 761 A.2d 1197, 1201 (Pa. Super. 2000) (*en banc*) (quoting *Matter of Adoption Charles E.D.M., II*, 708 A.2d 88, 91 (Pa. 1998)).

Termination of parental rights is governed by Section 2511 of the Adoption Act, which requires a bifurcated analysis.

> Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to section 2511(b): determination of the needs and welfare of the child[.]

*In re C.M.K.*, 203 A.3d 258, 261-62 (Pa. Super. 2019) (citation omitted).

We need only agree with the lower court as to any one subsection of Section 2511(a), as well as Section 2511(b), in order to affirm the court's decree. *In re B.L.W.*, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*); *see also C.S.*, 761 A.2d at 1201. Consistent with these principles, we focus on the court's findings under Subsection 2511(a)(2), which provides:

> **(a) General rule.--**The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
> […]
>
> (2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

23 Pa.C.S.A. § 2511(a)(2).

In order to satisfy Section 2511(a)(2), the petitioning party must establish: "(1) repeated and continued incapacity, abuse, neglect or refusal; (2) that such incapacity, abuse, neglect or refusal caused the child to be without essential parental care, control or subsistence; and (3) that the causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied." ***In re Adoption of A.H.***, 247 A.3d 439, 443 (Pa. Super. 2021). Moreover, grounds for termination under Section 2511(a)(2) "are not limited to affirmative misconduct, but concern parental incapacity that cannot be remedied." ***Id.*** (citing ***In re Z.P.***, 994 A.2d 1108, 1118 (Pa. Super. 2010). On this point, we emphasize that "[p]arents are required to make diligent efforts toward the reasonably prompt assumption of full parental duties." ***Id***.

In its Pa.R.A.P. 1925(a) opinion, the orphans' court explained termination was warranted under Section 2511(a)(2), because Mother would not, or could not, address her drug addiction:

> [Mother] refused to address the main issue holding her back from parenting her son – drug use. Immediately after the

- 6 -

Adjudication/Disposition Hearing she entered a 30-day inpatient rehab at White Deer. [Mother] completed that program but within days, tested positive for fentanyl, marijuana and methadone. Mother skipped the first scheduled urine test because she knew she began using as soon as she left the inpatient program and would test positive. Caseworker Danielle Urban testified that between no-show positives and submitted urine tests, Mother's test results were always positive for substances. Caseworker Urban referred [Mother] to the Drug Treatment Court program, which she felt could really help Mother. [Mother] was refused admission to the program due to her dishonesty concerning her substance use. [Mother] denied using fentanyl but every urine test she took came back positive for fentanyl. Due to this, [Mother] was denied entry into the program.

The treatment plan for [Mother] included parenting classes with Project First Step and with Family Behavioral Therapy sessions provided by Family Services. Lilly Baranski with Project First Step felt [Mother] had adequate parenting skills during visits with her son. However, Ms. Baranski never dealt with [Mother's] drug issues [] and took [Mother's] word that she was doing "fine" as far as drug issues[.]

Tiffany Barker from Family Services described her program as working with behaviors associated with substance abuse. Mother attended 34 sessions and missed 27. Ms. Barber's program usually lasted 5 to 6 weeks, 2 times per week. Due to the spotty attendance by Mother, she never finished the program. Ms. Barker discussed the consequences of [Mother's] continued substance use with [her] and how that affected [the Child] being returned [to Mother's care]. Despite this, [Mother] continued to test positive for substances. [Mother] left a second attempt at inpatient therapy after only 6 days. Both Ms. Barker and Caseworker Urban told [Mother] she needed an extensive 90-day inpatient program if she wanted to have her son returned. [Mother] never enrolled in such a program. [Mother] stated at the January Review Hearing that she was going to enter the Gage House inpatient program. Ms. Barker encouraged her to do that. [Mother] never enrolled.

Dr. Peter von Korff summed up the situation after completing his evaluation of [Mother]. Dr. von Korff's

opinion was that the priority for [Mother] in getting her son returned was to get her substance abuse under control. That necessity came before parenting and any other issues in [Mother's] life. Unless and until the drug use was dealt with, [Mother] was in no position to be parenting her son.

[Mother] continued to use substances throughout [the Agency's] involvement. In fact, her history of substance problems went back to 2017 with [the Agency]. Further, [Mother] admitted to 4 inpatient admissions for substance abuse prior to 2016. [Mother's] urine test results would continually come back positive for fentanyl, THC and methadone. [Mother] insisted she had a medical marijuana card and that's why the tests were positive for THC. [Mother] never produced the card for [the Agency] despite requests to see the card, nor did she show it to Ms. Barker, nor was the card produced or entered into evidence as part of [Mother's case-in-chief] in the termination proceedings. [Mother] always maintained she did not know why the tests were positive for fentanyl as medical marijuana does not contain that, but street marijuana does. Mother admitted to Ms. Barker she uses marijuana every day and is under the influence all the time.

[Mother] has been treating for heroin addiction with methadone programs. She attended the Esper Methadone Program for over a week but was discharged due to her continual positive testing for fentanyl. [Mother] started with the New Directions Methadone Program in late November 2022. However, in April 2023, she relapsed on heroin, and tested positive for heroin among other substances at the January 2023 Review Hearing.

During the course of [the Agency's] involvement, [Mother] never seriously addressed her substance abuse. [Mother] was told by Caseworker Urban that [the Agency] was recommending changing the Child's placement goal to Adoption at the January 2023 review hearing. [Mother's] response was to ingest enough substances that she tested positive for fentanyl, THC, heroin, opiates and methadone when the Court ordered a urine test at the hearing. [Mother] admitted to those drugs but contested the positive findings for cocaine and ecstasy. [Mother] is in no better position to parent [the Child] now then she was when [the Child] was removed in April 2022.

Trial Court Opinion, dated 9/18/23, (T.C.O.) at 19-21 (style adjusted).

On appeal, Mother argues there was insufficient evidence to establish grounds for termination under Section 2511(a)(2). **See** Mother's Brief at 16-17. Mother seemingly concedes that the Agency met the first two elements of the Section 2511(a)(2) analysis; however, she claims that the Agency could not prove that she was unable to remedy the conditions that led to the Child's placement. Mother maintains that she had been consistently working towards remedying the conditions that brought the Child into placement. For support, Mother cites the testimony of Lilly Baranski, the service provider who described the positive bond between Mother and the Child. **See id.** at 17.

We are not persuaded by Mother's argument. First, we observe that the court did not find Ms. Baranski's testimony particularly helpful, because she was not fully aware of Mother's struggles with addiction. Moreover, Mother's reference to the bond she shares with the Child, though relevant to the Section 2511(b) analysis, is not the focus of a Section 2511(a)(2) inquiry.

Upon review, we conclude that the orphans' court's findings were supported by the record, and thus we discern no abuse of discretion. It is plain to see that Mother was in the throes of addiction. Her addiction rendered her incapable of providing essential care to the Child, thereby necessitating the Child's removal. Mother's numerous relapses demonstrated that Mother

cannot remedy her addiction, thus termination is warranted under Section 2511(a)(2).[3] Mother's first appellate issue is without merit.

Having resolved the first step of the bifurcated termination analysis under Section 2511(a), we move to the second step under Section 2511(b), which is the subject of Mother's second appellate issue. That section provides:

> **(b) Other considerations.—**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent.

23 Pa.C.S.A. § 2511(b).

The "determination of a child's particular developmental, physical, and emotional needs and welfare must be made on a case-by-case basis," but "[c]ourts should consider the matter from the child's perspective, placing [their] developmental, physical, and emotional needs and welfare above concerns for the parent." *In the Interest of K.T.*, 296 A.3d 1085, 1105 (Pa. 2023) (citing *In re Adoption of C.M.*, 255 A.3d 343, 358 (Pa. 2021) (further citations omitted); *see also C.M.K.*, 203 A.3d at 261-62 (the focus of Section 2511(a) is the conduct of the parent, whereas the focus of Section 2511(b) is the best interests of the child).

---

[3] For us to affirm the orphans' court, it is not necessary for use to conclude that Mother's addiction constituted "a refusal" to parent, or that her failure to achieve sobriety meant that she made a conscious decision not to remedy the conditions.

The plain language of Section 2511(b) mandates that, in assessing the petition to terminate parental rights, the "primary consideration" must be the child's "developmental, physical and emotional needs and welfare." *K.T.*, 296 A.3d 1105. It is well-established that the child's "emotional needs" and "welfare" include "intangibles such as love, comfort, security, and stability." *Id.* at 1106 (citing *T.S.M.*, 71 A.3d at 267). Recently, our Supreme Court held that this analysis also requires courts to consider, not only whether the children have a bond with their biological parent, but also whether the children are in a pre-adoptive foster home and whether they have a bond with their foster parents. *Id.* (citing *T.S.M.*, 71 A.3d at 268; *In re D.C.D.*, 105 A.3d 662, 677 (Pa. 2014)).

In looking at the bond with the parent, the Supreme Court clarified the scope of the parent-child bond inquiry in the overall Section 2511(b) analysis. First, the Supreme Court reiterated that trial courts must determine whether the child has a bond with the biological parent, the nature of that bond, and effect that severance of the bond would have on the child. *Id.* at 1109 (citing *T.S.M.*, 71 A.3d at 267, 269). Regarding severance, the question is whether termination would sever a necessary and beneficial bond. "[T]o grant termination when a parental bond exists, there must be clear and convincing evidence that the bond is not necessary and beneficial." *Id.* at 1114.

The question is not merely whether severance would have an adverse impact on the child.[4]  The Supreme Court held that the trial court "must not truncate its analysis and preclude severance based solely on evidence of an 'adverse' or 'detrimental' impact to the child." *Id.*

Moreover, our Supreme Court cautioned the parent-child bond inquiry is but one factor to consider under a proper Section 2511(b) analysis. *Id.* at 1111 (citing *In re N.A.M.*, 33 A.3d 95, 103 (Pa. Super. 2011)).   "[B]ond, *plus* permanency, stability and all 'intangible' factors may contribute equally to the determination of a child's specific developmental, physical, and emotional needs and welfare, and thus are all of 'primary' importance in the Section 2511(b) analysis." *Id.* at 1109 (emphasis added).  The Supreme Court

---

[4] The Court recognized that severance of *any* bond could have an "adverse impact" and upset the child.  Therefore, courts must focus on the *nature* of the bond commensurate with the impact of severing that bond:

> Severance of a "necessary and beneficial" bond would predictably cause more than the "adverse" impact that, unfortunately, may occur whenever a bond is present.  By contrast, severance of a necessary and beneficial relationship is the kind of loss that would predictably cause "extreme emotional consequences" or significant, irreparable harm.  Moreover, by evaluating the impact of severance to determine if it will impose more than an adverse or detrimental impact, courts correctly refine their focus on the child's development and mental and emotional health rather than considering only the child's "feelings" or "affection" for the parent, which even badly abused and neglected children will retain.

*K.T.*, 296 A.3d at 1109-1110 (footnotes and internal citations omitted).

held that trial courts have discretion to place appropriate weight on each factor before making a decision under Section 2511(b). *Id.* at 1113.

Returning to the case before us, the orphans' court discussed why it determined that termination would best serve the Child's needs and welfare under Section 2511(b):

> Dr. von Korff came to the conclusion that severing the parental relationship between [Mother and the Child] would serve the [Child's] best interest if [Mother] did not maintain sobriety and continued her substance abuse. Dr. von Korff based his opinion on the improvements in the child's behavior in the foster home. Caseworker Urban detailed the improved behaviors, [the Child] was responding to boundaries; he was able to sit and carry on conversations whereas he was out of control and all over the place before placement. The [Child] is also improving with his potty training.
>
> [The Child] is in an adoptive home with parents who are skilled at dealing with children needing special services. Caseworker Urban believes the parents will be advocates for [the Child] and help him get necessary services to be able to navigate safely in the world. Caseworker Urban's opinion was that termination of [the Child's] parental rights would be in [the Child's] best interests and there would be no detrimental impact on him from termination of [Mother's] parental rights.

T.C.O. at 21-22

The orphans' court opined further:

> Evidence is considerable that contact between [Mother] and [the Child] resulted in extreme problematic behaviors by [the Child]. Once visitation was suspended, [the Child's] behavior improved. [The Child] does not ask about [Mother]. Dr. von Korff opined that it was better to sever the parent/child relationship so that [the Child] could grow up in a secure environment, and the [Child] would be ill-

- 13 -

served to remain in [Mother's] care if her circumstances had not changed. There is no credible evidence that this has occurred. [The Child's] destructive behaviors minimized once he was placed and behavioral services consistently provided. Therapy to work through [the Child's] behavioral problems due to [Mother's] dismissive parenting and drug use are ongoing.

The evidence demonstrated that severing contact with [Mother] has not had any detrimental effect on [the Child]. Not permitting [the Child] to have to face the continued instability he has been through in his short life is of paramount concern to this court.

[Mother] has continuously demonstrated she cannot or will not place her [Child's] needs above her own. The skills and judgment necessary to provide for the emotional well-being of [the Child] are non-existent. The total history of this case reveals that [Mother] is unable and unwilling to change or to give priority to the needs for safety and adequate care for her [Child.] She was given numerous opportunities to demonstrate she would work through her substance abuse to be able to provide the necessary parenting for her [Child] and consistently failed to do so.

*Id.* at 23-24

On appeal, Mother argues that the bond between Mother and the Child was longstanding. Mother also downplays the effect her addiction had on the Child, citing testimony that she never appeared intoxicated during her visits. Mother concludes that the Agency did not present sufficient evidence that termination would best serve the Child's interest. ***See generally*** Mother's Brief at 18-20.

We do not doubt that Mother cares deeply for the Child, or that they share a bond. However, the mere presence of a parent-child bond does not defeat termination under Section 2511(b). The record indicates that the Child,

- 14 -

who has special needs, made tremendous progress once he was placed in a stable, pre-adoptive foster home. Pursuant to **K.T.**, **supra**, the court must not truncate its analysis and preclude termination based solely on evidence of an "adverse" or "detrimental" impact to the child. Even so, we note that the orphans' court here concluded that severance of the parent-child bond would not have a detrimental effect on the Child. The record supports this conclusion. For these reasons, we discern no abuse of discretion and conclude that termination under Section 2511(b) was proper. Mother's second appellate issue is without merit.

Decree affirmed.

Judgment Entered.

_Benjamin D. Kohler_

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 04/08/2024